UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TANYA CARPENTER ET AL.                           CIVIL ACTION

VERSUS                                           NO: 25-788

TANGIPAHOA PARISH ET AL.                         SECTION: "J"(4)

## ORDER AND REASONS

Before the Court are a *Motion to Dismiss* **(Rec. Doc. 4)**, filed by Defendants Tangipahoa Parish, Toni Jean Catalano, Lisa M. Cooley, Robby Miller, and Kelly Wells, and an opposition filed by Plaintiffs Tanya Carpenter and High Road Productions, LLC (Rec. Doc. 13). Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

This case arises out of Plaintiffs being barred from conducting horse barrel racing events at the Florida Parishes Arena, a multi-purpose facility owned by Tangipahoa Parish in Amite, Louisiana. Carpenter is the Louisiana director of the National Barrel Horse Association, through which she organized barrel races at the Florida Parishes Arena from 2004–2024. Carpenter also is the owner-operator of High Road Productions, through which she produced separate barrel racing events at the Florida Parishes Arena during the same time period. In recent years, from 2020–2024, Plaintiffs conducted 157 horse barrel races and clinics.

Plaintiffs allege their barrel racing events were banned in the Florida Parishes

1

Arena in retaliation for Carpenter's complaints of facility and personnel issues at the parish facility. Beginning with circumstances associated with the death of a trainer at a barrel racing event in 2016, Plaintiffs recite repeated complaints, particularly involving Arena Director Kelly Wells. From Plaintiffs' telling, in response to the complaints, Wells stopped communicating with Carpenter, withheld parish employees as event support, refused to address safety and maintenance concerns, and charged more for Plaintiffs' events than similar events of others. At an April 2024 meeting between Carpenter and parish arena and administrative staff, Wells allegedly lashed out at Carpenter, lobbing expletives and accusations at the event organizer. Thereafter, Carpenter was advised to communicate with Lane Taillon, who was set to become arena director in 2025. Later that year, Taillon confirmed Plaintiffs' forty-four barrel racing events for 2025.

    The relationship between Plaintiffs and the parish, however, disintegrated before the 2025 events. On September 21, 2024, the arena simultaneously hosted a barrel race and a car show. After complaining to Taillon about noise and safety concerns and being told Wells was unreceptive to car show alterations, Carpenter went to the arena office and encountered Arena Office Manager Toni Jean Catalano. The encounter quickly turned aggressive, with Plaintiffs contending Catalano would have battered Carpenter if another arena staff member had not intervened. Following the encounter, Carpenter closed a gate to separate the car show from the barrel race. Law enforcement officers, who were called to the scene by attendees, also recommended the gate be closed. Nonetheless, Catalano reopened the gate.

The next month, on October 23, 2024, Tangipahoa Parish attorneys wrote to Plaintiffs, barring them from parish facilities after November 25, 2024. The ban included scheduled 2025 events. Plaintiffs allege this action was in retaliation for their complaints and, therefore, in violation of their First Amendment rights. Associated with this violation, Plaintiffs also assert *Monell* liability against Tangipahoa Parish. Further, Plaintiffs claim violation of their procedural due process rights. In addition to the federal constitutional claims, Plaintiffs also bring Louisiana state law claims against Defendants, including infliction of emotional distress, defamation, assault, negligence, and vicarious liability. Finally, Plaintiffs allege, pursuant to the federal Declaratory Judgment Act, that Defendants violated Carpenter's rights under the Louisiana Public Records Act.

Defendants now move to dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). They contend the federal claims merely mask state-law causes of action and, therefore, fail to establish federal subject matter jurisdiction. Defendants also contend the federal claims have prescribed. Plaintiffs oppose.

## **LEGAL STANDARD**

The party asserting jurisdiction must carry the burden of proof for a Rule 12(b)(1) motion to dismiss. *Randall D. Wolcott, M.D., P.A. v. Sebelius,* 635 F.3d 757, 762 (5th Cir. 2011) (citing *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001)). In deciding a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "the district court is free to weigh the

3

evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Krim v. pcOrder.com, Inc.,* 402 F.3d 489, 494 (5th Cir. 2005) (quotation omitted).

Federal question claims can be dismissed for lack of subject matter jurisdiction only when the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell v. Hood,* 327 U.S. 678, 682–83 (1946); *see also Meason v. Bank of Miami,* 652 F.2d 542, 547 (5th Cir. 1981) (citing *Bell* standard); *Tiner v. Cockrell,* 756 F. App'x 482 (5th Cir. 2019) (same). The district court must consider a Rule 12(b)(1) motion before any other motion to dismiss ground. *Ramming,* 281 F.3d at 161 (citation omitted).

To survive a Rule 12(b)(6) motion to dismiss, on the other hand, the plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678. The court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.,* 565

4

F.3d 228, 232 (5th Cir. 2009). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citation omitted).

## DISCUSSION

Defendants make two dismissal arguments: (1) this Court lacks subject matter jurisdiction and (2) Plaintiffs' claims are time-barred. Both arguments fail.

First, as currently pled, Plaintiffs state federal causes of action. Defendants focus their Rule 12(b)(1) argument on Plaintiffs' First Amendment claim. To state a First Amendment retaliation claim, non-government employee-plaintiffs must show "(1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (citations omitted, but applying *Perry v. Sindermann,* 408 U.S. 593, 597 (1972)). Parties agree the three-part test in *Keenan* applies to this matter. On that measure, Plaintiffs sufficiently plead each element.

Throughout their thorough Complaint, Plaintiffs recite escalating episodes that culminated with their November 2024 ban from Tangipahoa Parish facilities. Defendants have not asserted another version of facts, and for the purposes of the Rule 12(b)(1) challenge, the Court accepts Plaintiffs' well-pled version. Carpenter complained about safety, maintenance, signage, and personnel issues at the Florida

5

Parishes Arena to Tangipahoa Parish staff. Complaints of public safety, use of public goods, and the awarding of public contracts are matters of public concern—and, thus, types of constitutionally protected speech. *See Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). Carpenter's complaints to various parish employees— ranging from the parish president to the arena office manager—are protected speech. Second, Defendants' response to Carpenter's complaints increased in combativeness and culminated in the November 2024 ban. These actions, as pled, would chill a person of ordinary firmness from complaining. Third, the parish's escalating actions correspond to Carpenter's escalating complaints. Beginning with safety complaints in January 2021, Plaintiffs chart changes in their then-seventeen-year relationship with parish staff. Parish staff communicated less openly and, at times, even hostilely with Carpenter, withheld parish employees as event support, refused to address safety and maintenance concerns, charged more for Plaintiffs' events than similar events of others, and ultimately banned Plaintiffs from parish facilities. In this Rule 12 analysis, Defendants' actions appear motivated to retaliate against Carpenter's complaints.

Put simply, Plaintiffs' First Amendment claim does not "clearly appear[] to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell*, 327 U.S. at 682–83. From the pleadings, this Court has subject matter jurisdiction pursuant to federal question jurisdiction of 28 U.S.C. § 1331.

Defendants' second basis for dismissal also fails. Defendants assert Plaintiffs'

6

constitutional claims are time-barred. Parties agree that a First Amendment retaliation claim under 42 U.S.C. § 1983 borrows the state's timeframe and, in Louisiana, is subject to a one-year limitation period. *See Jones v. Orleans Par. Sch. Bd.*, 688 F.2d 342, 344 (5th Cir. 1982) (applying Louisiana's one-year prescriptive period to § 1983 claim). Federal law, however, governs when the limitation period begins, specifically commencing "when the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Redburn v. City of Victoria*, 898 F.3d 486, 496 (5th Cir. 2018) (quotation omitted). In limited circumstances, the Fifth Circuit has applied the Continuing Violations Doctrine, permitting a plaintiff to "complain of otherwise time-barred discriminatory acts if it can be shown that the [injury] manifested itself over time, rather than in a series of discrete acts." *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003). In all situations, a plaintiff's awareness of injury is the threshold inquiry. As the Fifth Circuit has explained "awareness for accrual purposes does *not* mean actual knowledge; rather, all that must be shown is the existence of circumstances that would lead a reasonable person to investigate further." *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 762 (5th Cir. 2015) (citation cleaned up, quotation omitted).

Defendants insist Plaintiffs' allegations "are alleged to have taken place on or before April 16, 2024." (Rec. 4-2 at 7). On that date, in a meeting that included Lane Taillon, Toni Jean Catalano, Florida Parishes Arena grounds preparer Alvin Stevens, Chief Administrative Officer Joe Thomas, and Public Works Director Andy Currier, Kelly Wells spoke derogatorily to Carpenter, stating that "every word that comes out

7

of her mouth is a f---ing lie." (Rec. Doc. 1 at 18 ¶ 57). The substantive aftermath of this meeting was a change in the chain of communications:

> Upon information and belief, Arena Director Kelly Wells was privately reprimanded for his outrageous behavior and Tanya Carpenter was advised by Public Works Director Andy Currier that she would be dealing with Lane Taillon from then on as he was scheduled to take over in January 2025 as Arena Director.

*Id.* at 18 ¶ 58. Defendants overstate the significance of the April 2024 meeting. Rather than a discrete injury, the meeting represents an escalation but continuation of the parish's response to Carpenter's complaints.

In contrast, the injury Carpenter reasonably would be aware of arrived with the October 2024 letter from parish attorneys, barring Plaintiffs from the use of parish facilities. Before this letter, the parish responded cooly to Carpenter's complaints, but it would not be reasonable to understand the responses to violate First Amendment protections. In fact, the resolution of the April 2024 meeting—providing Carpenter a different point of contact for the arena—would more reasonably be understood to encourage Carpenter's continued communication of concerns.

The October 2024 letter, however, clarified the previous actions of parish employees. Carpenter reasonably became aware of her injuries in this light. Carpenter's various complaints culminated in this action of retaliation. Put another way, the barring of Plaintiffs from all parish facilities manifested the earlier, continuing violations, connecting the ban to parish actions beginning in January 2021. As the parish letter was received on October 23, 2024, the one-year limitations

period began to run on that date. Plaintiffs filed this action on April 23, 2025, presenting no time bar. Dismissal on this ground cannot be granted.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' *Motion to Dismiss* **(Rec. Doc. 4)** is **DENIED**.

New Orleans, Louisiana, this 26th day of June, 2025.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE